Judge Teachout

CONFORMED COPY

STATE OF VERMONT
WINDSOR COUNTY, SS.

| | | |
|---|---|---|
| HENRY D. RILEY, | ) | Windsor Superior Court |
| *Plaintiff/Appellant* | ) | Docket No. 425-8-04 Wrcv |
| | ) | |
| v. | ) | |
| | ) | Appeal From: |
| KEVIN DEMPSEY, | ) | Small Claims Court |
| *Defendant/Appellee* | ) | Docket No. 489-12-03 Wrsc |

## DECISION ON APPEAL FROM SMALL CLAIMS COURT

### *Introduction*

Plaintiff Henry D. Riley appeals a small claims judgment in favor of the defendant, Kevin Dempsey. In a decision dated August 2, 2004, Assistant Judge William M. Boardman issued a judgment in Mr. Dempsey's favor on Mr. Riley's claim, as well as a judgment for Mr. Dempsey on his counterclaim. Both parties appear *pro se*.

### *Proceedings Before the Small Claims Court*

This case concerns Kevin Dempsey's rental of Henry Riley's house, beginning in September of 2000 and continuing until October of 2003. Mr. Riley filed his complaint on December 24, 2003, claiming that the Dempseys' dog and cat had caused extensive damage to Riley's house during the Dempseys' tenancy. Mr. Dempsey filed his answer and counterclaim on February 2, 2004, seeking a return of his security deposit plus a penalty for willful withholding under 9 V.S.A. § 4461(e).

The Small Claims Court held a hearing on May 26, 2004. Both parties testified, and they also presented testimony from witnesses Gregory Brown, Francine Capizzi, Alice Anderson, John Bodnar, Dana Waters, and from Kevin Dempsey's wife Cynthia Bailey-Dempsey. The main issues in dispute concerned (1) the extent of damage caused by the Dempseys' pets, and whether the damages exceeded "normal wear and tear," (2) the terms of the lease, including the timing and circumstances of the termination, and (3) whether Mr. Riley had wilfully and wrongfully withheld the security deposit beyond the 14 days provided by statute.

On the first issue, Mr. Riley presented photographs taken in April of 2004, showing scratches in various areas of the floor, in a sliding door, and in the upholstery of a couch and chairs. He also presented testimony from Gregory Brown of Brown's Hardwoods, Inc., estimating the total cost of resurfacing and refinishing the floors (including moving and storing the furniture) at about $4,470. Mr. Riley also presented evidence documenting additional costs of replacing a sliding door and re-upholstering the furniture. Mr. Dempsey presented testimony from Dana Waters, a real estate agent who had visited the house in early October of 2003. Mr. Waters testified that he did not observe any

1



unusual wear and tear in the house. The Small Claims Court did not make extensive findings concerning the extent of the damage, but the court decided this first issue in Mr. Dempsey's favor by concluding that Mr. Riley had failed to show damages "above 'normal wear and tear' in a circumstance where pets are specifically allowed under the lease."

Both parties testified about the timing and circumstances of the termination, as did additional witnesses Francine Capizzi and Cynthia Bailey-Dempsey. The written lease expired in August of 2003, but the Dempseys continued their tenancy and paid the September rent. Earlier, in June of 2003, Mr. Riley had written the Dempseys to tell them to vacate the house by December 15, 2003. Nevertheless, the tenancy ended in October of 2003. It was clear from all the testimony that the Dempseys stayed in the house through October 4, and that Mr. Riley moved into the house on October 5, but that the Dempseys left many of their belongings there until October 29, and that they continued to clean the house until then. Mr. Riley emphasized that the Dempseys did not complete their moving and cleaning until October 29, and he maintained that Mr. Dempsey still owed rent from October 4 to October 29.

CONFORMED COPY

Ms. Bailey-Dempsey testified that they had wanted to stay in the house, especially after she broke her ankle in late September of 2003, but that Mr. Riley had insisted that they leave because he needed to move back in. She also testified that she worked out an arrangement with Mr. Riley that they would have additional time to complete the cleaning and to move out their belongings. Moving was difficult for her because she was on crutches. The Dempseys sent Mr. Riley a check to cover rent through October 4. He cashed it, and he never asked for additional rent until months later, when he claimed additional rent as a defense to Mr. Dempsey's counterclaim for return of the deposit. In addressing this second issue, the Small Claims Court found that Mr. Riley had insisted, over Dempsey's objections, that he had to move back into his house, that Riley moved back in on or about October 4, that the Dempseys moved out on or about October 5, and that the disarray that occurred between October 4 and October 29 was not unusual "in the context of a somewhat sudden and premature termination of the lease." (Findings 13, 16, 17, and 19). The court concluded that Mr. Riley had forced the Dempseys out of the house before they wished to leave, and that there was no basis for awarding rent for the period of October 4 to October 29, 2003.

On the third issue, Mr. Riley explained that the Dempseys did not complete their cleaning until October 29, 2003, and that he responded to their request for the security deposit in a letter dated November 6, 2003, setting forth his claims for damages totaling $5,800. The Small Claims Court resolved this issue in Mr. Riley's favor, concluding that the situation was confusing, and that his withholding of the security deposit was not "wilful" within the meaning of the statute.

The Small Claims Court awarded judgment in favor of Mr. Dempsey, both on Mr. Riley's claim and on Mr. Dempsey's counterclaim. The judgment award of $1,861 includes $1,836 for return of the deposit plus $25 in court costs. Mr. Riley filed his Notice of Appeal on August 31, 2004.

2



CONFORMED COPY

### *Standard of Review on Appeal*

On appeal before the Superior Court, the standard of review is limited. The appeal must be heard and decided "based on the record made in the Small Claims Court." 12 V.S.A. § 5538. The appellate court will not set aside findings of fact unless they are clearly erroneous. *Bartley-Cruz v. McLeod*, 144 Vt. 263, 264 (1984). The appellate court gives less deference to the trial court with regard to issues of law. However, the weight of the evidence and the credibility of witnesses are for the Small Claims Court as the trier of fact. *Brown v. Pilini*, 128 Vt. 324, 328 (1970). When reviewing questions of fact, this court does not substitute its judgment for that of the Small Claims Court. *Whipple v. Lambert*, 145 Vt. 339, 341 (1985). Also see Vermont Rules of Small Claims Procedure 10(d) (appeals limited to questions of law).

### *Issues Raised on Appeal*

Appellant Henry Riley filed his arguments in various documents. First, he filed his Memorandum of Law, in which he raised five issues to be addressed on appeal. Then he filed a Motion to Set Aside Previous Judgment, Vacate Orders and Grant a New Trial, in which he restated his concerns in a list of seven issues. He also included Attachment A, in which he elaborated on his concerns. This court restates Mr. Riley's arguments and addresses them as follows:

*1. The Small Claims Court failed to follow established procedures by allowing new evidence to be entered while testimony was being given.*

Mr. Riley does not elaborate on how the Small Claims Court's procedures for admitting evidence varied from the rules, or on how he was prejudiced by the procedures that were followed. The Small Claims Court is designed to provide "simple, informal and inexpensive" procedures for settling claims. 12 V.S.A. § 5531(a). The Vermont Rules of Small Claims Procedure call for the court to conduct the hearing in a summary manner, Rule 6(a), and the rules of evidence do not apply, Rule 6(b). After reviewing the record, the Superior Court is unable to conclude that the Small Claims Court erred in the admission of evidence.

*2. Although the Small Claims Court denied defendant's attempt to introduce additional evidence after the trial, the court improperly used his additional evidence to ascertain certain findings of fact, without allowing the plaintiff the same opportunity to present additional evidence.*

Mr. Dempsey filed additional evidence approximately two weeks after the hearing. The Small Claims Court rejected his attempt to introduce new evidence, stating in its decision that "the court did not consider the additional evidence submitted by Defendant in making the findings." Mr. Riley now complains that the Small Claims Court *did* consider Mr. Dempsey's additional evidence, and that he (Mr. Riley) was not given an opportunity to submit his own additional evidence.

Mr. Riley believes that the Small Claims Court considered Mr. Dempsey's additional evidence because the court found, as fact, that Mr. Riley had used his own house on two occasions

3



FILED
JAN - 5 2005

Windsor County Clerk

during Mr. Dempsey's rental, during October of 2001 and October of 2002. (Finding 16). However, the findings do not show that the Small Claims Court improperly considered Mr. Dempsey's additional evidence, because they are amply supported by testimony in the record. Both Mr. Dempsey and Ms. Bailey-Dempsey testified about Mr. Riley using the house on those two occasions. Mr. Riley denied that he had used the house in October of 2002, and thus the record contains conflicting testimony about that issue. Given the conflicting evidence, however, the trial court had the responsibility to accept one version or another, which it did. The court's finding that Mr. Riley used the house on both occasions is not clearly erroneous based on the record evidence, and there is no basis for disturbing that finding on appeal.

*3. The Small Claims Court's Findings of Fact contain contradictions.*

Mr. Riley claims that certain findings of fact are contradicted by other findings of facts. In support of this claim, he recites various findings, but he fails to demonstrate any clear contradiction. If certain findings are taken out of context, there may be a superficial suggestion of contradiction, but when the findings are read together, there is no clear conflict.

For example, the term of the second lease expired on August 31, 2003 (Finding 9). After the lease expired, Mr. Dempsey remained in the premises and continued to pay monthly rent (Finding 6), but later there was a "somewhat sudden and premature termination of the lease" (Finding 19). These findings are not contradictory. After the *written* lease expired on August 31, 2003, Mr. Dempsey remained in the premises and continued to pay monthly rent; at that point the *implied* lease became a month-to-month rental. Nevertheless, Mr. Riley insisted, over the Dempseys' objections, that he had to move back into his house; at some point the Dempseys agreed to be out of the house by October 5, 2003. (Finding 13). There is no contradiction in these findings.

As another example, the court found that the Dempseys agreed to be out of the house by October 5 (Finding 13), while also finding that they "continued to come to Plaintiff's house to, among other things, retrieve belongings, do laundry, and clean the house." (Finding 17). Again, however, the findings are not contradictory. The Dempseys were out of the house by October 5, in the sense that they were living and sleeping elsewhere. However, they continued going to Mr. Riley's house because of an apparent understanding among all the parties that it would take them additional time to move all their belongings out and to complete the cleaning. The Small Claims Court did not make detailed findings about that understanding, but the court resolved this issue by concluding that Mr. Riley had failed to prove a basis for collecting rent beyond October 4.

These findings may appear confusing because of the many details involved in this complicated situation. However, Mr. Riley has not shown that the findings are contradictory. The findings are supported by the evidence, they are not clearly erroneous, and there is no basis for reversing them on appeal.

CONFORMED COPY

4

FILED
JAN - 5 2005
Windsor County Clerk

*4. Irrelevant data was included in the Small Claims Court's decision.*

Mr. Riley complains that the Small Claims Court made findings and stated conclusions regarding amounts paid under the lease. The court found that both the first and second written leases called for annual rent of $21,600, whereas Mr. Dempsey paid monthly rent of $1,836 under the first lease, but only $1,800 under the second lease. Twelve payments of $1,800 would total $21,600, whereas 12 payments of $1,836 totaled $22,032. (Finding 1 and 7). The court also found that, over an occupancy of about 37 months, Mr. Dempsey paid over $66,600 in rent, plus utilities and some minor repairs. (Finding 21). Based on the above findings, the court stated the following conclusions:

> Plaintiff has already benefitted from an apparent overpayment of rent during the first year of Defendant's tenancy and from assorted minor improvements Defendant made to Plaintiff's property. Defendant has made no claim for either of these items.

Mr. Riley objects to the court's inclusion of the above conclusions, maintaining that they are completely irrelevant to the decision as there was no dispute concerning amounts of rent due or paid.

Mr. Riley is correct that it was not necessary for the court to refer to "an apparent overpayment" or to Mr. Dempsey's "assorted minor improvements," but those observations are based on evidence that was admitted at the hearing, and there is no indication that they resulted in any error in the decision that was made. They do not provide a ground for reversal on appeal.

*5. The Small Claims Court failed to include citations to law in its "Conclusions of Law," thus making it difficult for the appellant to address errors on appeal.*

Mr. Riley objects that the Small Claims Court did not include specific citations to Vermont law within its Conclusions of Law concerning "normal wear and tear." The Small Claims Court did cite to, and quote from, 9 V.S.A. § 4461, in its discussion of the counterclaim, but there is no specific citation to the statutory definition of "normal wear and tear" which appears in the definitions at 9 V.S.A. § 4451(5). Nevertheless, it is clear that the court based its decision on a correct understanding that "normal wear and tear" is excepted from recoverable damages, under § 4461(b)(2). There is no requirement for including legal citations in a judicial opinion. The basic requirement is for the court to explain "what was decided and why." *Richard v. Richard*, 146 Vt. 286, 287 (1985). The Small Claims Court's decision meets this standard.

*6. The Small Claims Court erred by applying an incorrect standard for "normal wear and tear."*

Mr. Riley complains that the Small Claims Court failed to quote the statutory definition of "normal wear and tear," and that the court erred in referring to a "common understanding" of what is meant by the term. The Small Claims Court correctly concluded that a landlord may not recover from a tenant for "normal wear and tear," under 9 V.S.A. § 4461(b)(2). However, Mr. Riley

CONFORMED COPY

5



FILED
JAN - 5 2005
Windsor County Clerk

contends that the court disregarded existing law by crafting its own definition of "wear and tear."

The statute defines "normal wear and tear" as "the deterioration which occurs, based upon the reasonable use for which the rental unit is intended, without negligence, carelessness, accident or abuse of the premises or equipment or chattels by the tenant or members of his or her household or their invitees or guests." 9 V.S.A. § 4451(5). This definition is an implied term of the parties' rental agreement, under 9 V.S.A. § 4453. It is similar in effect to the expression "ordinary wear and tear," which has been held to apply to "gradual deterioration which results from use, lapse of time, and the operation of the elements." *Drouin v. Wilson*, 80 Vt. 335, 343 (1907). In a more recent case, the Vermont Supreme Court has upheld an award of damages exceeding "normal wear and tear" where the tenants' sons had driven nails and smashed holes in the walls, broken windows and lights, and heavily scratched a door. *Prevo v. Evarts*, 146 Vt. 216 (1985).

There do not appear to be any Supreme Court cases directly addressing whether pet damage falls within "normal wear and tear." However, when courts are called upon to apply a statute under new circumstances, one factor to consider is the common understanding of the words. See, e.g., *Baker v. State*, 170 Vt. 194, 200 (1999). In addition, the express language of the statute calls for consideration of "the reasonable use for which the rental unit is intended." Thus it was not error for the Small Claims Court to consider the "common understanding" of the words, nor was it error for the court to consider the explicit reference to pets in the first written lease.

The question of whether the damages in this case exceeded "normal wear and tear" was largely a factual determination to be made by the Small Claims Court. It was the province and duty of the Small Claims Judge, as the trier of fact, to weigh the evidence and then apply the appropriate legal standard. Mr. Riley has not shown that the Small Claims Court's findings of fact were clearly erroneous, or that the court applied an erroneous standard. There is no basis for overturning the decision on appeal.

7. *Taken together, the above-described factors show that the Small Claims Court was confused, or that its decision was improperly influenced by prejudice.*

Upon examination of the above factors, it does not appear that Mr. Riley has demonstrated any error, or that he has been prejudiced by unfair procedures. As explained above, it was the task of the Small Claims Court to weigh the evidence and to determine whether Mr. Riley had met his burden of proving his claim. Based on the evidence presented, the court's finding that Mr. Riley had not established damages beyond "normal wear and tear" is supported by the facts introduced at trial. Where conflicting facts are presented, the court's role is to determine which ones are more credible. The fact that the judge found the Defendant's evidence more persuasive does not lead to a conclusion that the judge was biased against the Plaintiff. When the court's findings are supported by the evidence, and its conclusions are supported by the record, there is no ground for reversal on appeal.

A party claiming bias or prejudice by the court bears the burden of presenting clear evidence in support of such claims. *Cliche v. Fair*, 145 Vt. 258, 261-62 (1984). "[I]t is not enough merely

6



to show previous adverse rulings, no matter how erroneous, or numerous (omitting citations); or merely to show a judge's expression of opinion, uttered in what he conceived to be the discharge of his judicial duty, based upon evidence produced before him." *Id.* at 262 (quoting *Pettengill v. New Hampshire Insurance Co.*, 129 Vt. 23, 33 (1970) (further citation omitted)). In the instant case, Mr. Riley has not presented any clear indication of prejudice; instead his claim relies on unsubstantiated suspicion. See *State v. Carter*, 154 Vt. 646, 647 (1990) (mem.). He has not presented any basis for disturbing the Small Claims Judgment on appeal.

### ORDER

For the foregoing reasons, the Judgment of the Small Claims Court is *affirmed.*.

Dated at ___Hartford___, Vermont, this **4th** day of January, 2005.

_____
Hon. Mary Miles Teachout
Presiding Judge



CONFORMED COPY

FILED
JAN - 5 2005
Windsor County Clerk