## Village of Woodstock v. Bijan Bahramian

[631 A.2d 1129]

No. 91-017

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 12, 1993
Motion for Reargument Denied June 1, 1993
Motion for Reconsideration Denied July 13, 1993

418

*Harry A. Black* of *Black Black & Davis*, White River Junction, for Plaintiff-Appellee.

*William A. Hunter*, Ludlow, for Defendant-Appellant.

**Gibson, J.** Defendant Bijan Bahramian appeals from a decision of the superior court, which denied his application for approval to renovate a building in the Village of Woodstock, issued an injunction mandating removal of some renovations, and imposed fines for making renovations prior to obtaining a permit. He raises six issues on appeal: (1) whether the court erred by failing to conclude that the permit requested was granted by operation of law; (2) whether the court applied the correct criteria in reviewing defendant's application; (3) whether the court's review should have been limited to the four items defendant raised in his appeal; (4) whether the court erred in finding that defendant had violated the preliminary injunction and therefore improperly increased the fines imposed; (5) whether the design review permit procedure is unconstitutionally vague and therefore invalid;[1] and (6) whether the zoning ordinance was properly enacted. We hold that the court's findings do not support its conclusions under the criteria listed in the planning ordinance and, therefore, vacate the order to remove specific renovations and remand for review under the correct criteria. We affirm the fines imposed because we find no error in the

---

[1] We do not reach the constitutional issue because we decide that the court's design plan review was improper on other grounds.

court's conclusion that defendant violated the preliminary injunction.

During the summer and fall of 1986, defendant was renovating a building he owned in the Village of Woodstock. The building was located in a design control district created under 24 V.S.A. § 4407(6). Pursuant to Village zoning regulations, constructing or altering the exterior of a building in this district is prohibited without first obtaining design plan approval from the planning commission. Defendant obtained a permit, dated August 18, 1986, authorizing specified renovations to his building. On November 7, 1986, he filed a new application for a permit with the administrative officer of Woodstock, requesting approval of eight amendments to his August permit.

The Woodstock design review board recommended denying approval for all eight of the amendments on November 21, 1986.[2] The planning commission's decision was issued on December 19, 1986, granting design plan approval for all the proposed alterations except four: (1) rose window on north side, (2) rose window on east side, (3) shed dormer on west side, and (4) dormer fanlight windows on the east side. Defendant appealed this decision to the superior court.

In the meantime, defendant had continued renovating the house throughout the fall. The Village of Woodstock filed a complaint against defendant in superior court on December 3, 1986, seeking to enjoin any further unauthorized renovations on the building. The court issued a preliminary injunction on February 2, 1987, based upon a stipulation of the parties, enjoining defendant from doing "any further exterior work on [the house], for which defendant ha[d] no permit." In April 1988, the court granted a motion by the Village consolidating the action for injunction and the appeal from the decision of the planning commission.

---

[2] The board also noted four other changes to the design drawing submitted with defendant's November application, but recommended approving each of these minor alterations. Hearings before the planning commission took place on November 26 and December 10 and 17. On the last day of hearings, defendant amended his application by requesting approval for the four changes noted by the design review board and for skirting for the stacked bay windows already requested for the east side of the house.

After a de novo trial, the court issued findings and a notice of decision, and ordered defendant to remove the four alterations that were not approved by the planning commission as well as two other alterations the commission had approved. The court also imposed fines for altering the building prior to obtaining a permit and for violating the preliminary injunction. Following the court's notice of decision, defendant moved for relief from judgment on the ground that the permit had been deemed granted by operation of law prior to the appeal because the Village had failed to issue its decision within the time specified by law. The court denied the motion. Final judgment was entered on September 27, 1990, and defendant appealed to this Court.

## I.

Defendant first argues that the court erred in denying his motion for relief from judgment because the permit had been granted by operation of law. According to defendant, he filed his application for amendments to the August permit on September 17, 1986, and the planning commission did not issue a decision until December 17, 1986. Under the Village of Woodstock zoning ordinance, the design review board must issue recommendations on an application within twenty-one days of filing, and the planning commission must issue a decision within fourteen days from the date the recommendations are made. Failure to issue a decision within the time specified constitutes an automatic granting of the application. Village of Woodstock Zoning Ordinance § 4.103. Defendant maintains that the superior court had no jurisdiction over his appeal because the permit had been granted by operation of law when the planning commission failed to issue a timely decision.

We disagree with defendant's jurisdictional challenge because we conclude that the facts on which it is based are incorrect. The application at issue was not filed on September 17, 1986,[3] as he asserts, but on November 7, 1986. The design re-

---

[3] Defendant did file an application to amend the August permit on September 17, 1986, but this application only requested approval to build two stacked bay windows on the east side of the house. After review by the design review

view board issued timely recommendations on November 21, 1986. Pursuant to an agreement executed by the commission and defendant on November 26, 1986, the time limit for the commission's decision was extended to December 24, 1986. The commission issued a timely decision on December 19, 1986.

## II.

Defendant argues second that, in evaluating his application, the court did not apply the correct criteria as provided in the Village of Woodstock Zoning Ordinance.[4] The ordinance lists specific design criteria that the commission must consider before granting design plan approval, including a comparison of proposed height, setback, proportion, pattern, materials, architectural features, and roof shape, in relation to adjacent buildings or those in the immediate area. *Id.* § 4.104. The commission is also required to consider lines of continuity along the street and the direction of the front facade. *Id.*

Under the ordinance, "[i]t is not intended that the details of old buildings be duplicated precisely, but they should be regarded as suggestive of the extent, nature and scale of details that would be appropriate on new buildings or alterations." *Id.* The commission should not insist that new buildings or alterations copy existing architectural styles and decorative details. *Id.* Nor should it be overly restrictive regarding plans for buildings of little historic value, or not highly visible from a public street, unless alteration "would seriously impair the historic or architectural value of surrounding buildings or the surrounding area." *Id.*

Defendant argues that, under the ordinance, his proposed alterations should have been reviewed in terms of their impact on

board, defendant was required to revise drawings for presentation to the planning commission. Defendant failed to submit any revised drawings, and the record shows no indication that he pursued this application. Rather, he filed a new application on November 7, 1986, requesting approval for the stacked bay windows on the east side and seven other alterations. This is the application that is at issue in this appeal.

[4] He also claims that the court's findings are not supported by the evidence. We do not address this claim because it is not supported by argument or reference to any finding that is unsupported. Rather, defendant argues that the court applied the wrong criteria, and thus, made findings that do not support its conclusions under the correct criteria.

the neighborhood. The court, however, denied approval primarily on the ground that, in the aggregate, the proposed alterations turned a plain, utilitarian structure, built for middle or working class occupancy, into a high style building for the upper class. Defendant maintains that the court erred in considering the historic origins of the building, the character and authenticity of the proposed alterations, and the functional utility of the proposals because the ordinance does not set out any such criteria. We agree.

The court denied approval for six proposed alterations, the same four alterations denied by the commission plus the stacked bay windows on the east side and the pent roof on the ell. The court made over two pages of findings regarding the two proposed rose windows. It found that there were no other rose windows in the design control district, but that there were some round windows. It also found that, although the commission had approved a rose window for the south side of the building, the windows proposed for the north and west sides would be much more visible to the public. Both these findings are relevant under the ordinance, which requires consideration of architectural features, such as windows, prevailing in the immediate area and consideration of the visibility of the proposed alteration.

The court, however, made a number of other findings regarding the rose windows, which were not required under the ordinance. In particular, the court found that round and rose windows typically appear on public buildings or homes of wealthy people. Consequently, it found that the proposed rose windows would constitute a complete break with the working class origins of defendant's building. There is nothing, however, in the ordinance to indicate that alterations must be authentic to the historical origin of the building to obtain design approval. The court concluded that the windows were "out of place." In view of the court's findings, we are unable to determine whether the windows are "out of place" because they are not consistent with the historical origins of the building or because they are not consistent with the architectural features in the immediate area.

Regarding the proposed stacked bay windows on the east side, the court found that there are a number of such windows

in the design control district, but that, unlike those proposed, they generally extend down to the ground. Nevertheless, the court noted several in the district that did not extend to the ground and concluded that they were not out of character to the area. The court denied approval, however, apparently because they were "not particularly necessary" and did not "add appreciable room to the interior." There is no legal basis for consideration of such factors.

The court also denied approval for the shed dormer on the west side. It found that there were several shed dormers in the district, but that they were relatively recent additions that predated the Village ordinance, and that shed dormers are not authentic to the period in which the house was built. It noted, however, that shed dormers are an important source of interior space. It also found that the addition of the dormer significantly increased the window-to-clapboard ratio on the west side of the building, substantially changing the original structure. Again, we are unable to discern whether the court's denial of approval was based on the criteria set out by law or its consideration of other factors.

The court denied approval for the fanlight windows on the gable dormers because they were "very high-style," and, therefore, "inappropriate in the context of a simple frame house." The court found that the cumulative effect of "yet one more cute addition" eroded all authenticity. Authenticity is not a criterion listed in the ordinance. The court made no findings regarding fanlight windows in the immediate area. In considering the pent roof, the court made only cursory findings, stating, "It serves no actual function and could be cut off. Cutting it off would make the raised roof something less of an appendage." Again, the court made no findings regarding the criteria listed in the ordinance.

We conclude that the findings do not support the court's denial of approval for the six proposed alterations. Although some findings pertain to the legal criteria as set out in the design plan amendments to the Woodstock ordinance, significantly more findings pertain to factors that should not have been considered by the court in determining whether to grant design plan approval.

■ Although we vacate the court's decision on design plan approval for failure to make findings under the legal criteria, we also address defendant's third issue because it is likely to be raised again on remand. Defendant contends that the court erred in concluding that the entire application was before it on appeal. He maintains that the court's review should have been limited to the four items for which the commission denied approval, which he appealed. Because the Village did not file a cross-appeal, he argues that the items approved by the commission could not be reconsidered by the superior court.

The court concluded that the entire application was before it for review because, under 24 V.S.A. § 4472, an appeal to superior court is de novo. The court also reasoned that, because design review was a discretionary area, "it would be foolish to say that consideration of any element must be accomplished without consideration of others." The court then denied two proposed alterations that had previously been granted by the commission, in addition to denying approval for the four alterations rejected by the commission.

In support of the court's authority to consider the entire application on review, the Village quotes *In re Torres*, 154 Vt. 233, 236, 575 A.2d 193, 195 (1990), stating that "whatever the zoning board of adjustment or the planning commission might have done with an application properly before it, the superior court may also do if an appeal is duly perfected." This language, however, does not support the Village's position. As stated in *Torres*, the court has no power where appeal is not perfected.

We agree with defendant that the court's review was limited to the four items raised in the notice of appeal. Defendant appealed the commission's decision only to the extent that it denied four proposed alterations. The Village did not file a cross-appeal. Accordingly, the alterations that were approved by the commission were not properly before the court. See *Cliche v. Fair*, 145 Vt. 258, 263–64, 487 A.2d 145, 149 (1984) (although amount of damages awarded was less than fair, Court will not sua sponte modify amount where plaintiff did not cross-appeal).

## IV.

Defendant argues that the court erred in concluding that he had violated the preliminary injunction, and therefore improperly increased the fine on this basis. The court found that defendant began making renovations on his building prior to obtaining the permit on December 19, 1986, and imposed a fine of $50 per day for seventy-two days ($3,600) for these violations under 24 V.S.A. § 4444(a). Defendant does not challenge this fine. The court also imposed a fine for renovations conducted without a permit in the period following December 19, 1986. Because defendant made relatively few renovations after this date, the court determined that a fine of $1 per day was appropriate. It increased the fine to $5 per day, however, because defendant also violated the injunction during this period.

Defendant disputes the court's conclusion that he violated the preliminary injunction, which provides, in part, that

> the defendant, Bijan Bahramian, is hereby strictly restrained and enjoined from doing or causing to be done *any* further exterior work on a house located on Church Street Extension, in the Village of Woodstock, Vermont, for which defendant has no permit from the Woodstock Planning Commission. (Emphasis added.)

He maintains that no work that required a permit was done on the house after December 19, 1986, and claims that none of the three acts found by the court to have occurred after the injunction issued constitutes a violation of the injunction.

We reject defendant's argument because it is contrary to the plain language of the order, which prohibited *any* exterior work on the house for which defendant had not received a permit. There is no exception for exterior work that does not require a permit. Moreover, we do not accept defendant's contention that no permit was necessary to move the door because the move was only temporary. There is no finding and defendant makes no reference to evidence that supports this assertion. We also agree with the trial court that *removal* of the chimney was a violation of the injunction, although the ordinance does not require a permit to make *alterations* to chimneys. We find no error in the court's conclusion that defendant violated the preliminary injunction, nor in its consideration of this factor in determining an appropriate fine.

## V.

Defendant contends finally that the Village of Woodstock zoning ordinance was not properly adopted. The design review amendments became effective January 24, 1983; therefore, defendant's challenge is untimely. 24 V.S.A. § 4494 (challenge for purported procedural defects must be made within two years of date rule went into effect).

*The order to remove certain alterations on defendant's building is vacated. The case is remanded to the superior court for design plan review, under the correct criteria, of the four alterations for which the planning commission denied approval. The fines imposed are affirmed.*